UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
NDF1, LLC,

                        Plaintiff,

          v.                                     **MEMORANDUM AND ORDER**
                                                  24-CV-7395-SJB-AYS

JAMES TUBBS, et al.,

                        Defendants.
------------------------------------------------------------------X

**BULSARA, United States District Judge:**

      Plaintiff NDF1, LLC ("NDF1") has filed a motion for default judgment in this foreclosure action. Because the documents suggest that NDF1 was not in possession of the promissory note (the "Note") prior to initiating foreclosure, and because of the Court's serious doubts about the authenticity of other documents submitted, the motion is denied. Furthermore, the Court will hold a hearing on **October 23, 2025 at 11 A.M. in Courtroom 930**, where counsel must appear with percipient witnesses who can testify about the provenance of the documents submitted with the motion, the purported loss of the Note, and other matters detailed in this opinion. Counsel is expected to address at the hearing whether sanctions should be imposed.

      Some background is in order. NDF1 commenced this lawsuit against one named Defendant, James Tubbs, and two unnamed Defendants, alleging violations of New York Real Property Actions and Proceedings Law and seeking foreclosure on a Long Island property. (Compl. dated Oct. 22, 2024 ("Compl."), Dkt. No. 1 ¶ 1). NDF1 alleges that Tubbs executed the Note in the amount of $ 86,000 with Home Loan Investment

Bank for a loan, and delivered a mortgage to the same as collateral on the Note, on April 17, 2008.  (*Id.* ¶¶ 8–9).  The mortgage encumbers 110 Brook Street, Garden City, New York.  (*Id.* ¶ 9; Mortgage dated Apr. 17, 2008, attached as Ex. C. to Compl., Dkt. No. 1-5 at 2).  Through a series of assignments, NDF1 claims it possesses both the Note and the Mortgage.  (Compl. ¶ 10).  The Note was allegedly assigned to NDF1 on May 27, 2022, (Affidavit of Lost Note dated Sep. 13, 2024 ("Affidavit"), attached as Ex. E to Compl., Dkt. No. 1-7 ¶¶ 6, 8), and the Mortgage was assigned to NDF1 on August 24, 2022, (Assignment of Mortgage dated Aug. 24, 2022 ("Assignment of Mortgage), Attached as Ex. D to Compl., Dkt. No. 1-6 at 11–13).  NDF1 also alleges that in December 2008, Tubbs defaulted on payments due under the terms of the Note and Mortgage.  (Compl. ¶ 14).  A year after the assignment of the Note and Mortgage, but some 15 years after Tubbs defaulted, on April 17, 2023, NDF1 sent a ninety-day notice advising Tubbs of possible legal action if he failed to cure the default.  (*Id.* ¶ 16).  The Complaint was filed a year and a half later.

The Clerk entered default against the sole named Defendant, James Tubbs, on January 7, 2025.  (Entry of Default dated Jan. 7, 2025, Dkt. No. 13).  This motion for default judgment followed thereafter.  (Mot. for Default J. dated Mar. 24, 2025, Dkt. No. 17).

"A default does not establish conclusory allegations, nor does it excuse any defects in the plaintiffs' pleading."  *Mateo v. Universal Language Corp.*, No. 13-CV-2495, 2015 WL 5655689, at *4, *6–*7 (E.D.N.Y. Sep. 4, 2015) (finding that defaulting defendant was not plaintiff's employer under applicable law based on his testimony that

2

contradicted allegations in the complaint), *report and recommendation adopted*, 2015 WL 5664498, at *1 (Sep. 24, 2015).  For example, an allegation is not "well-pleaded" if it is contradicted by other evidence put forth by the plaintiff.  *See id.* at *4; *Montblanc-Simplo GmbH v. Colibri Corp.*, 739 F. Supp. 2d 143, 151 (E.D.N.Y. 2010) ("[O]nce plaintiffs provided an actual picture of the allegedly infringing pen that contradicted the allegations in the Complaint, those allegations would no longer be considered well-pleaded.").  The Second Circuit "ha[s] a strong preference for resolving disputes on the merits" and has cautioned that "a default judgment is the most severe sanction which the court may apply."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations and citation omitted).

To that end, "[d]efault does not necessarily preclude the court's consideration of affirmative defenses available to the defendant, especially when they have obvious merit and their applicability is evident from the face of the complaint."  *Romanova v. Amilus Inc*, 138 F.4th 104, 121 (2d Cir. 2025).  A district court has an affirmative obligation to ensure default judgments are not used as an instrument of abuse, and that may often require consideration of affirmative defenses *sua sponte*.  *See id.* at 121–22.

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor."  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  The Court must then determine "whether the unchallenged facts constitute a legitimate cause of action."  10A

3

Charles Alan Wright & Arthur R. Miller et al., *Fed. Prac. & Proc.* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law."); *see Taizhou Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013) ("[B]efore a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law." (citing *Finkel,* 577 F.3d at 84)).

> Under New York law, a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.  Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.

*OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quotations and citations omitted).  "Standing is determined as of the date the action was commenced, and physical possession of a note on that date is sufficient to establish standing" for foreclosure.  *CIT Bank N.A. v. Donovan*, 856 F. App'x 335, 337 (2d Cir. 2021); *see also E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 16 (2d Cir. 2015) ("When a plaintiff demonstrates that upon commencement of the action it possessed a note, indorsed in blank, by way of physical delivery, New York has consistently found the plaintiff to have sufficient interest in the enforcement of the debt to support standing in a foreclosure action.") (collecting cases).

4

Existence and possession of the Note is in serious doubt. "'An affidavit attesting to physical possession of the note prior to commencement of the [foreclosure] action is sufficient to establish physical delivery' and 'to transfer both the note and the attendant right to foreclose,' thus rendering 'any purported deficiencies in the chain of title' irrelevant." *Gustavia Home, LLC v. Hoyer*, 362 F. Supp. 3d 71, 91 n.14 (E.D.N.Y. 2019) (quoting *E. Sav. Bank, FSB v. Whyte*, No. 13-CV-6111, 2016 WL 236221, at *3 (E.D.N.Y. Jan. 20, 2016)). But the affidavit must itself be sufficiently reliable to authenticate the note, and the note must meet the requirements of New York law under the Uniform Commercial Code ("UCC"). *See Blue Castle (Cayman) Ltd. v. Miller*, 772 F. Supp. 3d 416, 424 (S.D.N.Y. 2025).

NDF1's statements in this regard are, at bottom, attempts at confusion and obfuscation, and appear to be an attempt to perpetrate a fraud on Defendants and this Court. NDF1 claims to have last possessed the Note in May 2022. (Affidavit ¶ 8). And the Affidavit and Complaint both contend that NDF1 came to realize it has lost the Note in September 2024. (Compl. ¶ 11; Affidavit ¶ 6 ("I . . . determined the . . . original Note was misplaced, lost, or destroyed on 9-5-24.")).

The Affidavit was executed by Shawn Muneio, who is the Managing Partner of NDF1, *two years* after the Note was lost. (Affidavit ¶ 1). Because he cites to no regular business practices, this raises a serious question about how he determined that the Note was lost. *See Residential Credit Sols., Inc. v. Gould*, 171 A.D.3d 638, 643 (1st Dep't 2019) (reversing foreclosure where plaintiff's affidavit "failed to identify any document in the

5

original loan file on which he relied in reaching the conclusion that plaintiff obtained the original note on April 1, 2009").

There is further reason to doubt that NDF1 ever had possession of the Note. The Affidavit states that the original Note was transferred to NDF1 on May 27, 2022—the very same day it was lost—which suggests that NDF1 had possession of the Note for a single day (or a few hours or minutes at best) before it was lost. (Affidavit ¶¶ 6, 8). The form "fill in the blank" Affidavit simply notes this fact, but fails to include any details about how the Note was lost on the same day NDF1 was assigned the instrument.[1]

There is yet another problem. The Affidavit has no details, and was prepared two years after the Note was lost, on the same day it was purportedly in NDF1's possession. Thus, there is serious doubt that whatever NDF1 possessed was authentic, and not itself a copy. Muneio does not claim to have ever seen the Note, and nothing in the 2024 Affidavit says that back in 2022, NDF1 possessed an authentic note with an appropriate allonge.

All of this is a basis to deny default judgment since it calls into question possession in the first instance, and the Affidavit does not cure the lack of possession. *See Deutsche Bank Nat'l Tr. Co. v. Kirschenbaum*, 181 A.D.3d 456, 456 (1st Dep't 2020) ("[H]ere no business record is attached that supports the employee's conclusion regarding when plaintiff came into possession of the note. This is insufficient[.]");

---

[1] If the Note actually had been lost on that date—as opposed to never having been in NDF1's possession—it beggars belief that some months later NDF1 would have accepted assignment of the Mortgage. But that is exactly what it did on August 24, 2022. (Assignment of Mortgage at 11–13).

6

*LaSalle Bank Nat'l Ass'n v. Carlton*, 204 A.D.3d 985, 987 (2d Dep't 2022) ("The lost note affidavit submitted by the plaintiff in support of its motion, inter alia, for leave to enter a default judgment did not . . . *explain* when or how the note was lost." (emphasis added)); *Cap. One, N.A. v. Gokhberg*, 189 A.D.3d 978, 980 (2d Dep't 2020) (reversing foreclosure and denying default judgment); *Wilmington Sav. Fund Soc'y, FSB v. Tamisi*, No. 22-CV-1982, 2023 WL 2561787, at *5 (E.D.N.Y. Mar. 17, 2023) ("The Lost Note Affidavit did not provide details as to DLJ's acquisition of the note from Argent, DLJ's eventual misplacement or loss of the note (if DLJ ever acquired the note), or the search process DLJ used to try to find the note. New York courts have found affidavits with similar deficiencies insufficient to establish standing." (citation omitted)).

That the Affidavit was executed two years after the Note was lost—in September 2024, a little over a month before the lawsuit was filed—suggests fraud being perpetrated on the Court: backfilling of an affidavit of lost note to coincide with the exact date of transfer, so that NDF1 can argue it possessed the Note prior to filing the lawsuit. Therefore, the affiant—Shawn Muneio—must appear for the hearing on October 23, 2025 to testify regarding the Affidavit he submitted in this case.[2]

---

[2] There is unfortunately more. The ninety-day notice warning Tubbs of foreclosure was sent out in April 2023. (Compl. ¶ 16). But that was more than a year before NDF1 conducted a search to know whether it actually possessed the Note. In other words, it began the foreclosure process without first determining whether it had a valid instrument on which to foreclose, which calls into question its ability to foreclose in the first instance. *C.f. Citimortgage, Inc. v. Stosel*, 89 A.D.3d 887, 888 (2d Dep't 2011) ("[A]n assignment of the mortgage without assignment of the underlying note or bond is a nullity." (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009))).

The grave concerns the Court has about whether the Note was in NDF1's possession are underscored by the undated, unpaginated Allonge that follows it. (Affidavit at 10).  Because the Note was payable to Home Loan Investment Bank, NDF1 is required to show proof of assignment through an affixed allonge (unless the Note itself contains an endorsement of assignment).  *U.S. Bank Nat'l Ass'n v. Moulton*, 179 A.D.3d 734, 737 (2d Dep't 2020).

> If the endorsement is not on the note itself, it must be on an allonge, which is an additional piece of paper firmly attached to a note to provide room to write endorsements.  An allonge may be needed when there is insufficient space on the document itself for the endorsements; as long as the allonge remains firmly affixed to the note, it becomes a part of the note[.]

*Id.* (citing UCC 3-202[2]).

But the Allonge—which came from United Asset Management, LLC, presumably the predecessor possessor—is undated. (Affidavit at 10).  The date is pertinent, because an allonge must be affixed prior to or at the time of the assignment, not just prior to the foreclosure action being commenced.  *See Bank of New York Mellon Tr. Co., Nat'l Ass'n v. Andersen,* 209 A.D.3d 817, 819–20 (2d Dep't 2022) ("In the present case, there is a triable issue of fact as to whether the note was properly specially endorsed by an allonge . . . when it came into the possession of the plaintiff."); *Bayview Loan Servicing, LLC v. Kelly,* 166 A.D.3d 843, 846 (2d Dep't 2018).  Nor is the Allonge is referred to at all in the Affidavit of Loss.  (*See* Affidavit ¶¶ 1–11).

The final page of the Note, which indicates it is page 3 of 3, contains sufficient white space to fit an endorsement, which raises a question of why an allonge was used. (Affidavit at 6).  But having affixed an allonge, there is no evidence that the Allonge is

8

in any way related to the pages that precede it—*i.e.*, to the Note— or that it was stapled or "firmly affixed" to the original Note. This is a dispositive deficiency:

> The affidavits of the plaintiff's counsel and the plaintiff's loan servicer, submitted in support of the plaintiff's motion, also fail to indicate that the purported allonge is connected to the note or that it was firmly affixed thereto. Thus, this so-called allonge fails to meet the legal requirements of an allonge (*see* UCC 3–202[2]), and is not connected to the note by any admissible evidence[.]

*Moulton*, 179 A.D.3d at 738.

The Allonge also lacks any information about the chain of assignments of the Note from the original noteholder (Home Loan Investment Bank) to United Asset Management and ultimately to NDF1, which is required for it to have standing to foreclose. *See US Bank ex rel. Structured Asset Sec. Corp. Mortg. Loan Tr. 2006-BC1 v. Cadeumag*, 196 N.Y.S.3d 862, 873 (Sup. Ct. 2023) ("There is no evidence that Aegis assigned the note to Lehman or whether it was Aegis or Lehman who lost the note. Nor is there any assignment of the note from Lehman to SASC or from SASC to U.S. Bank. Such a break in the chain of assignment is fatal to U.S. Banks standing."); *see also Wilmington Sav. Fund Soc'y*, 2023 WL 2561787, at *5.

These defects preclude recovery on the Note and also require denial of the motion for default judgment. *See id.*; *Moulton*, 179 A.D.3d at 873 (holding that possession of note, without valid allonge or endorsement, precluded foreclosure); *5AIF Sycamore 2, LLC v. 201 EB Dev. III*, 223 A.D.3d 550, 551 (1st Dep't 2024) ("[S]ince the allonges were undated and showed no evidence of having been securely attached, there are issues of fact as to plaintiff's status."). But in addition, the undated, unpaginated nature of the Allonge, and the fact that there is only one Allonge reflecting only the last

9

assignment and none of the prior ones, and with a blank sheet of paper preceding it, suggests another fraud: creation of the Allonge well after the assignment solely to pursue foreclosure. The Allonge is signed by Claudio Chavez, who appears to have been the Managing Director at United Asset Management. (Affidavit at 10). NDF1 must arrange for Chavez to appear at the hearing on October 23, 2025 (through subpoena or cooperative efforts by contacting a representative of United Assignment Management).

## CONCLUSION

For these reasons, the motion for default judgment is denied. In addition, the Court will hold a hearing on **October 23, 2025 at 11 A.M. in Courtroom 930**, where NDF1 must produce witnesses who can attest to the veracity of the Affidavit (Shawn Muneio) and the Allonge (Claudio Chavez), and the other matters discussed herein, and where NDF1's counsel must be prepared to discuss sanctions.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  September 24, 2025
       Central Islip, New York